UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH MCCAULEY,

    Petitioner,

v.                                             Case Number: 09-cv-10215
                                               HON. AVERN COHN

NICK LUDWICK,

    Respondent,
_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

    This is a habeas case under 28 U.S.C. § 2254. Joseph McCauley ("Petitioner") is a state prisoner who was convicted of two counts of assault with intent to murder, one count of felon in possession of a firearm, and three counts of felony firearm following a jury trial in the Oakland County Circuit Court. He raises claims concerning the effectiveness of trial counsel and the improper scoring of the sentencing guidelines. Respondent, through the Michigan Attorney General's office, filed a response, arguing that the petition should be denied because Petitioner's claims lack merit. For the reasons which follow, the petition will be denied for lack of merit. The Court also will decline to issue a certificate of appealability.

### II. Facts and Procedural History

    Petitioner's convictions arose from a shooting incident which occurred in Pontiac, Michigan, on July 12, 2005, in a hallway outside an apartment belonging to his brother, Jason McCauley. Petitioner's trial lasted three days. His defense was self-defense. He

elected not to testify. Trial testimony revealed the following pertinent facts.

On the day in question, Ronald Young went to Jason's apartment to visit. Young dated Petitioner's sister, Patricia, for fifteen years, and they had two children together. When he arrived at the apartment, he saw Petitioner's truck in the parking lot. A man named Keon was sitting in the truck on the driver's side.

Young went into the apartment and asked about Patricia. He was told that she was outside in the truck. Young testified that his children, Petitioner's children, and Jason's children were in the apartment. He then left. Young admitted to carrying a weapon, a .38 revolver, tucked into his waistband.

While Young was walking down the hallway, his six-year-old daughter stepped into the hallway and asked if she could go with him, to which he replied yes. Petitioner then entered the hallway and said, "you're not taking shit." Trial Tr. vol. I, 177 Aug. 18, 2006. Young said he became angry. A physical altercation occurred between him and Petitioner. Young testified that another man was present during the altercation and yelled to Petitioner that he (Young) had a gun. During the altercation, Young was shot several times.

Young admitted to initially grabbing Petitioner by the neck. He could not explain the sequence of events because he said they occurred rapidly. He could not recall how many shots were fired but knew that he was hit in the back and that his daughter was also grazed in the side by one of the bullets. He remembered running from the scene, hearing shots as he was running, and carrying his daughter outside, where he asked someone to call the police.

Young further testified that he loved Petitioner like family. Prior to trial, he went

to the prosecutor's office with Petitioner's mother and asked for leniency for Petitioner. He admitted to lying at the preliminary-examination hearing because he said he was motivated by hate and revenge at that time.

When the police arrived at the scene, they did not find a gun on Young or in the hallway. Young told the police that Petitioner was the shooter.

Undercover Officer Thomas Martindale, who was based near the scene, received a radio call about the shooting and a description of the truck. When he saw the truck matching the description, he informed a marked car, who put on sirens to stop the truck. The truck immediately accelerated and made a series of turns until it was pulled over. Officer Martindale testified that he initially saw two black males in the truck but when it was pulled over there was only one black male in the truck, the driver, whom they apprehended.

Terry Dorius, the maintenance supervisor at the apartment complex, testified that, after he heard the gunshots, he walked around to the back of the building to enter. He saw two black males exiting the complex.

Officer Michael Joyce searched the car. He recovered a taser and computer but no firearm. About a half mile from the truck, he recovered a broken cell phone and a cigarette lighter.

Deputy Robert Charlton examined a bullet recovered from the scene of the shooting. He concluded that the firearm used in the shooting could have come from a .38 Special or .357 Magnum revolver, or a .9 mm Luger semiautomatic.

Young's twelve-year-old son, Ronald, also testified. He said he was at Jason's apartment when Petitioner and another man, Michael Fernandez, came to visit. He also

3

said his father visited for about twenty minutes. After his father left the apartment, Ronald said he heard gunshots. Petitioner, Fernandez, his father, and his sister were in the hallway when he heard the shots. He said he saw his father running away from Petitioner and Fernandez; Fernandez had a gun pointed at his father. However, in a prior report, Ronald said he did not see anyone with a gun. After the shooting, he said Petitioner and Fernandez ran to the truck.

Officer Doug Strabelow arrived at the scene and found Young lying in the parking lot, covered in blood. There were six bullet holes in him. Officer Strabelow testified that Young told him that Petitioner shot him because he was dating his sister. The officer said he was told by people in the parking lot that two black males ran from the apartment building to a truck, which was driven by a third black male.

Young's daughter was treated at the hospital for a bullet graze to the hip.

Young had emergency surgery for bullet wounds to his liver, kidney, and lungs. He received a tracheotomy, feeding tube, and multiple blood transfusions. He also received treatment for injuries to his jaw, arm, and back.

Petitioner was apprehended in Toledo, Ohio, about five months after the incident.

At sentencing, Young asked the trial court for leniency for Petitioner. He said he brought the firearm to the apartment and that it went off when he and Petitioner were wrestling.

The trial judge sentenced Petitioner to concurrent terms of twenty-five to fifty years in prison for the assault convictions, eighteen months to ten years in prison for the felon-in-possession conviction, consecutive to the mandatory two-year prison term for the felony-firearm convictions.

Petitioner filed a delayed application for leave to appeal with the Court of Appeals, raising the same claims raised in this petition. The Court of Appeals denied the delayed application for lack of merit. *People v. McCauley*, No. 281517 (Mich.Ct.App. May 1, 2008). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, again raising the same claims. The Supreme Court denied his application on September 22, 2008. *People v. McCauley*, 482 Mich. 991 (2008) (Table).

Petitioner neither filed a post-conviction motion with the state trial court nor a petition for writ of certiorari with the United States Supreme Court. Rather, on January 20, 2009, he filed the instant petition.

### III. Discussion

### A. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

Recently, the Untied States Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Section 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, but rather, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

## B.  Petitioner's Claims

### 1.  Claim I–Ineffective Assistance of Counsel

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to analyze medical records for the jury and for failing to object to the prosecutor's faulty use of facts not in evidence.  Each allegation will be considered in turn.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id.* at 689.    Second, the defendant must show that such performance prejudiced his defense.  *Strickland*, 466 U.S. at 689.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Here, Petitioner has not shown that counsel was deficient or that any alleged deficiency prejudiced him.  Petitioner says that at trial, the prosecutor relied on Young's medical records to prove her theory of the case.  He claims that defense counsel was deficient for failing to challenge the medical records because the prosecutor's theory was entirely based on Young having been shot in the back.  Petitioner argues that such use of the medical records provided the jury with a potentially flawed and subjection interpretation.  This claim is premised on the assumption that the medical records show that Young was not shot in the back.  Petitioner is mistaken.  The medical records state, "GSW.  Pt shot 5 times Mouth, L elbow, R and L Flank, near rectum."  That clearly demonstrates that Young sustained five gunshot wounds, at least one of which was on his flank, which is in the back.  A diagram in the medical records also shows a gunshot wound near the rectum on Young's back.

Petitioner has not made any offer of proof through an affidavit, or otherwise, indicating that the medical records are open to interpretation.  Thus, he has failed to establish that counsel was deficient.

Moreover, contrary to Petitioner's position, the record indicates that the prosecutor's theory was based on the lack of provocation and the number of critical shots fired.  The fact that some shots were fired while the victim was running away was simply additional proof.  Thus, trial counsel was not unreasonably deficient for failing to challenge the medical records as it relates to whether the shots were fired from behind when the records were unequivocal regarding the number of shots and the critical nature of the shots.

Additionally, there was other evidence besides the medical records establishing

that Young was shot in the back. Young's own testimony indicated that he was shot in the back. He testified that he had damage to his back. He also testified that at least one shot was fired in his back. He testified that he was running away when his daughter was grazed by a bullet. He testified that he heard gunshots when he was running away. He also testified that he was shot at least five times and only four times in the front.

Overall, under these circumstances, it is highly improbable that had trial counsel challenged the records, the jury would have acquitted Petitioner in light of the undisputed and overwhelming evidence against him. Further, because the placement of the shots in the back was not critical to the prosecutor's theory, Petitioner has not shown that he was prejudiced. Habeas relief is not warranted on this ground.

Petitioner also claims that defense counsel was ineffective when he failed to object to the prosecutor's question to Young, "[a]nd as you're running down the hall, your child gets hit with one of the bullets?" Trial Tr. vol. I, 186-87 Aug. 18, 2006. Petitioner contends that trial counsel should have objected as to lack of foundation or personal knowledge.

In this case, trial counsel could have anticipated Young's answer, and not objected, reasonably assuming that it would be better to have Young exculpate his client than it would be to object. The prosecutor made the above challenged statement and Young responded, "Really, I couldn't tell you if I was getting hit in the back because I had her like this and I was just running []." Trial Tr. vol. I, 186-87 Aug. 18, 2006.

9

Petitioner fails to demonstrate that trial counsel was deficient and that he was prejudiced by counsel's failure to object, because Young's answer was not necessarily inculpatory. Further, the jury was clearly instructed that the evidence consists of statements of witnesses and not the statement by lawyers. Habeas relief is not warranted on this ground.

### 2. Claim II–Sentencing Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in scoring offense variable 6, intent to kill or injure another individual, of the Michigan sentencing guidelines. Petitioner argues that he was sentenced on the basis of inaccurate information.

Claims regarding the improper scoring of sentencing guidelines are state-law claims and not cognizable in habeas-corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Cook v. Stegall*, 56 F.Supp.2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law and, therefore, are not cognizable).

However, a criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Townsend v. Burke*, 334 U.S. 736, 740–41 (1948) (stating that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct, violates due process of law);

10

*Koras v. Robinson*, 123 F.App'x 207, 213 (6th Cir. 2005) (same).  A *Tucker* violation arises only where the improper information "actually served as the basis for the sentence."  *United States v. Jones*, 40 F.App'x 15, 17 (6th Cir. 2002) (citations omitted); *Tucker*, 404 U.S. at 444, 447.

To be entitled to habeas relief on this claim Petitioner "must show that the sentencing court actually relied on this information and that it was materially false."  *Hanks v. Jackson*, 123 F.Supp.2d 1061, 1074 (E.D. Mich. 2000); *see also Collins v. Buchkoe*, 493 F.2d 343, 345-46 (6th Cir. 1974) (same).  When a petitioner fails to demonstrate that the sentencing court relied upon materially false information in imposing the sentence, the claim is without merit.  *Thomas v. Foltz*, 654 F.Supp. 105, 108 (E.D. Mich. 1987).

Petitioner has made no such showing.  He has failed to establish that the trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct.  He also not shown he was prejudiced by any state-law error or miscalculation.  Habeas relief is not warranted on this claim.

### IV.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on the claims raised in his petition.  Accordingly, the petition for writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1]  See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED.

Dated:  July 13, 2011			 S/Avern Cohn
					AVERN COHN
					UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 13, 2011, by electronic and/or ordinary mail.

					 S/Julie Owens
					Case Manager, (313) 234-5160

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.